**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SIMON SOLOMON, | ) | |
| | ) | |
|     Plaintiff, | ) | No.  17-cv-6144 |
| | ) | |
| v. | ) | Judge Dow |
| | ) | |
| THE COOK COUNTY BOARD OF | ) | |
| COMMISIONERS, et al., | ) | |
| | ) | |
| | ) | |
|     Defendants. | ) | |

**INTERVENOR DEFENDANT KWAME RAOUL'S MEMORANDUM OF LAW IN
RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
<u>IN SUPPORT OF HIS CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

## BACKGROUND

On July 8, 2013, Illinois enacted the Firearm Concealed Carry Licensing Act. 430 ILCS 66/1 *et. seq.* ("CCL Act"). The CCL Act permits Illinois residents and certain non-residents who, among other things, already have valid Firearm Owner Identification ("FOID") cards to apply for a license to carry a concealed firearm ("CCL"), subject to certain licensing requirements and restrictions. 430 ILCS 66/10(a), 25. Section 65 of the CCL Act identifies certain areas where the possession of a firearm is prohibited. 430 ILCS 66/65. One such prohibited area is the Forrest Preserve District of Cook County ("FPDCC"). 430 ILCS 66/65(a)(14).

Plaintiff is a resident of Cook County who regularly fishes in the Skokie Lagoons, which are located within the FPDCC. (ECF No. 94 at ¶¶ 66, 72-74). On April 30, 2015, Plaintiff was arrested by a FPDCC police officer for possessing firearms on his person within the FPDCC. (*Id.* at ¶¶ 79-81). At the time of his arrest, Plaintiff held a valid CCL card. (*Id.* at ¶¶ 1).

Plaintiff challenges the constitutionality of Section 65(a)(14) of the CCL Act, alleging that this statute violates his rights under the Second Amendment, the Due Process Clause, and the Equal Protection Clause. Intervenor-Defendant is entitled to judgment as a matter of law because Section 65(a)(14) does not violate the Constitution. Thus, the Court should deny Plaintiff's Motion for Summary Judgment and enter judgment in favor of Intervenor-Defendant.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The parties previously filed a joint statement of facts with accompanying exhibits pursuant to Federal Rule 56 and Local Rule 56.1. (ECF Nos. 94-97). The parties' joint statement of facts is hereby incorporated herein. Additionally, Plaintiff has filed an additional affidavit in support of his Motion for Summary Judgment. (ECF No. 100-2). Intervenor-Defendant does not contest any of the statements made in Plaintiff's affidavit. Intervenor-Defendant provides no additional facts.

## LEGAL STANDARD

Intervenor-Defendant is entitled to summary judgment because there are no genuine issues of material fact precluding entry of a judgment in his favor as a matter of law. *See* Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016) (summary judgment is appropriate "where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law"). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party shall bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If there are no genuine issues of material fact when evaluated under the substantive law, and that substantive law dictates a result favoring movant, then the motion should be granted. "Only factual disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *McGinn v. Burlington Northern R.R. Co.,* 102 F.3d 295, 298 (7th Cir. 1996).

## ARGUMENT

Although Plaintiff frames his challenge to Section 65(a)(14) as an as-applied challenge, it is essentially a facial challenge. Plaintiff seeks to invalidate the law to the extent that it "prohibit[s] private citizens who are otherwise qualified to possess handguns from carrying handguns for self-defense in the forest preserves of cook county." (*See* ECF No. 100-4 at 8-9). In other words, Plaintiff is seeking to invalidate the law for any individual who holds a CCL card. And this law affects only CCL cardholders. After all, it is a crime in Illinois for a person to possess a firearm on their person anywhere in public without a valid CCL card. *See* 720 ILCS 5/24-1(a)(4). Therefore, it would be redundant for the Court to consider non-CCL cardholders when evaluating this law, as non-CCL holders are unable to possess firearms in public. *See id.* Indeed, those who do not possess a CCL card, but do possess a valid FOID Card, are only able to transport a firearm "unloaded and

in an enclosed case" and/or in a "broken down" and "non-functioning" state and cannot take their firearms to any public places. *See id.* Thus, Plaintiff's challenge is functionally a facial challenge to the law because if Plaintiff prevails, there would be no circumstance where the law could be enforced without being redundant to the criminal statute on unlawful use of weapons, which includes a prohibition on carrying firearms in public without a CCL.

"[A] plaintiff can only succeed in a facial challenge by 'establishing that no set of circumstances exists under which the Act would be valid,' *i.e.*, that the law is unconstitutional in all of its applications." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Facial challenges are disfavored, in part because they "threaten to short circuit the democratic process by preventing the law embodying the will of the people from being implemented in a manner consistent with the Constitution" and may frustrate the intent of the people's elected representatives. *Id.* at 450. Plaintiff alleges that Section 65(a)(14) is facially unconstitutional because it violates the Second Amendment, the Due Process Clause, and the Equal Protection Clause. All three theories fail.

**I.  Section 65(a)(14) Passes Second Amendment Scrutiny.**

The Seventh Circuit has developed a two-step test to evaluate constitutional challenges under the Second Amendment. *Kanter v. Barr*, 919 F.3d 437, 442 (7th Cir. 2019). "This is a textual and historical inquiry; if the government can establish that the challenged law regulated activity falling outside the scope of the right as originally understood, then the regulated activity is categorically unprotected, and the law is not subject to further Second Amendment review." *Id.* But if the historical evidence is inconclusive or suggests that the regulated activity is not categorically unprotected, then courts proceed to a second inquiry into the strength of the

government's justification for restricting or regulating the exercise of Second Amendment rights. *Id.* Section 65(a)(14) passes both steps of this test.

### A. The Cook County Forest Preserve Is A Sensitive Place That Falls Outside The Scope Of Second Amendment Protection.

At the outset, Plaintiff's framing of step one of this Second Amendment inquiry misstates the activity at issue. Plaintiff argues that the activity at issue is generally the right to carry a firearm outside the home for self-defense. (ECF No. 100-3 at 3). That general issue, however, was settled in *Moore v. Madigan*, 702 F. 3d 933 (7th Cir. 2012), and is not in dispute here. Instead, the specific activity at issue here is whether individuals may carry firearms on their person while outside[1] and within the borders of government property where family recreation occurs.

Part of the CCL Act's regulatory scheme prohibits any person from carrying firearms in certain sensitive places. These places include schools, government buildings, detention centers, public transportation, liquor establishments, and the FPDCC. 430 ILCS 66/65. These restrictions follow the Supreme Court's declaration in its decisions in *District of Columbia v. Heller* and *McDonald v. City of Chicago* that these rulings did not cast doubt on longstanding regulatory measures such as "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008)).

Thus, the Supreme Court has recognized that carrying firearms in sensitive places falls entirely outside the scope of Second Amendment protection. *See Heller*, 554 U.S. at 627 n. 26 ("We identify these *presumptively lawful* regulatory measures only as examples; our list does not

---

[1] Section 65(b) provides that CCL cardholders may still carry a concealed firearm on or about his or her person within a vehicle in the parking area and may store a firearm or ammunition concealed in a case within a locked vehicle or locked container out of plain view within the vehicle in the parking area. 430 ILCS 66/65(b).

purport to be exhaustive.") (emphasis added); *see also United States v. Mazzarella*, 614 F. 3d 85, 90 (3d Cir. 2010) ("By equating the list of presumptively lawful regulations with restrictions on dangerous and unusual weapons, we believe the Court intended to treat them equivalently – as exceptions to the Second Amendment guarantee."). And although the Supreme Court only listed two examples of sensitive places, the Court was careful to specify this was not meant to be an exhaustive list. *Heller*, 554 U.S. at 627 n. 26. For the purposes of the Second Amendment, places are generally considered sensitive based on the people found there and the activities taking place. *United States v. Class*, 930 F. 3d 460, 465 (D.C. Cir. 2019).

There have been laws prohibiting carrying firearms in wooded areas in the United States prior to the ratification of the Second Amendment. In 1721, Pennsylvania prohibited the carrying of guns or hunting on land not owed by that individual without specific license or permission from the landowner.[2] New Jersey passed an almost identical law in 1741.[3] Laws regulating the carrying of firearms in nature preserves and wildlife management areas continue to this day in Alabama (Ala. Code 1975 § 9-11-304), Maine (12 M.R.S.A § 756), Montana (MCA 87-5-401), Nebraska (Neb. Rev. St. § 47-708), California (14 CCR § 4313), and North Dakota (NDCC, 20.1-11-13).

Similar to these states and the historic laws of colonial Pennsylvania and New Jersey, the General Assembly appropriately deemed the FPDCC to be a sensitive place. Its home county,

---

[2] Repository of Historical Gun Laws, *The Statutes at Large of Pennsylvania, c. 142, p. 254, An Act to Prevent the Killing of Deer out of Season, and Against Carrying of Guns or Hunting by Persons not qualified*, DUKE CENTER FOR FIREARMS LAW, *available at* https://firearmslaw.duke.edu/search-results/?_sft_subjects=sensitive-times-and-places&_sfm_law_year=602+1936#1685 (last visited Sept. 11, 2020).

[3] Repository of Historical Gun Laws, *1718-1741 N.J. Laws 1010, An Act to Prevent Killing of Deer out of Season and against Carrying of Guns and Hunting by Persons not Qualified, ch. 35, § 4*, DUKE CENTER FOR FIREARMS LAW, *available at* https://firearmslaw.duke.edu/search-results/?_sft_subjects=sensitive-times-and-places&_sfm_law_year=602+1936#1685 (last visited Sept. 11, 2020).

Cook County, has a population that is estimated to be approximately 5.1 million people.[4] The FPDCC receives an estimated 62 million annual visits by county residents. (ECF No. 94 at ¶ 7). Of its roughly 70,000 acres throughout Cook County, 3,538 are within the corporate limits of the city of Chicago. (*Id.* at ¶¶ 8, 10). It features many family-friendly attractions, including the Brookfield Zoo and the Chicago Botanic Garden, which together host nearly three million annual visitors, including tens of thousands of child/student visitors through special programing for juveniles. (*Id.* at ¶¶ 11, 13-14). Hunting is prohibited throughout the FPDCC without authorization. (*Id.* at ¶ 48). And that authorization is generally reserved for the United States Department of Agriculture, Animal and Plant Health Inspection Services, and Wildlife Services to continue ongoing integrated wildlife management services, (*Id.* at ¶ 49), not the general public.

While the forest preserves of Cook County's bordering counties (the "collar counties," *i.e.,* Will, Lake, DuPage, McHenry, and Kane) provide for some family programing, none of them have the same level of attractions as the Chicago Botanic Garden or the Brookfield Zoo. The collar counties' populations are not nearly as large as Cook County's, nor do these collar counties have similar population densities. (*See* ECF No. 97-2). They also do not receive the same volume of annual visitors. For instance, in DuPage County, the largest and densest of the collar counties, its forest preserve welcomes an approximate 4 million annual visitors. (*Id.* at ¶ 95). This is substantially less than the 62 million annual visitors at the FPDCC. (ECF No. 94 at ¶ 7).

Additionally, unlike the collar counties, Chicago and surrounding Cook County are plagued by gun-related crime, which particularly affects children. Between 2010 and 2018, 3,672 children were victims of a shooting, 427 of whom died. (*Id.* at ¶ 69). And according to the Chicago

---

[4] The Court can take judicial notice of this population figure because its accuracy can be readily determined from a source, the Census, whose accuracy cannot be reasonably questioned. Fed. R. Civ. P. 201(b)(2). UNITED STATES CENSUS BUREAU, QUICK FACTS: COOK COUNTY, ILLINOIS, https://www.census.gov/quickfacts/cookcountyillinois/PST120219 (last visited Sept. 9, 2020).

Police Department, as of August 28, 2019, there were 181 juvenile shooting victims in 2019, 22 of whom died. (*Id.* at ¶ 70). In Cook County at large, between January 2, 2016 and May 29, 2019, there were 154 victims of first and second-degree murder who were age seventeen and under. (*Id.* at ¶ 64). 142 out of these 154 homicides involved firearms. (*Id.* at 66).

In addition, the FDPCC experiences numerous ordinance violations, many of which involve illegal firearm possession and gun activity. Within the FPDCC, between 2011 and 2019 there were 16,741 ordinance violations. (*Id.* at ¶ 54). Of those, 226 of those violations can be categorized as weapons violations. (*Id.* at ¶ 55). This includes 16 violations for firearm possession, 164 violations for discharging toy firearms, 16 violations for hunting devices. *Id.* And in 2018 alone, there were six violations of "firearm possession;" two violations of concealed weapons; four violations of weapons (one of which involved a rifle); and 15 incidents of major crimes within the FPDCC. (*Id.* at ¶ 56-57). Three of these "major crime" incidents involved a weapon. (*Id.* at ¶ 58).

Meanwhile, the forest preserves of the collar counties do not have the same level of gun-crime as the FPDCC. Within the Forest Preserve District of Kane County between 2015 and 2019, there was only one felony arrest, three arrests where a person possessed a firearm, and one assault with a firearm. (*Id.* at ¶¶ 89-90, 92). Within the DuPage County Forest Preserve District between 2015 and 2019, there were 208 total felony and misdemeanor arrests, only six of which involved a person possessing a firearm. (*Id.* at ¶¶ 100-01). Within the Will County Forest Preserve District between 2015 and 2019, there were four felony arrests, five arrests where a person possessed a firearm, and two arrests for assaults with firearms. (*Id.* at ¶¶ 107-08, 110). Within the Forest Preserve District of Lake County between 2015 and 2019, there was one felony arrest and two arrests where a person possessed a firearm. (*Id.* at ¶¶ 116-17). And the McHenry County

Conservation District had little to no recorded felony arrests or arrests where a person possessed a weapon between 2015 and 2019. (*See* ECF No. 97-21).

This information shows the General Assembly properly designated the FPDCC as a sensitive place where firearms are prohibited, while not designating other forest preserves in the State as such. After all, Chicago and Cook County experience hundreds of episodes of gun violence and gun-related arrests every year, *see supra*, versus the handful of these types of arrests found in the collar counties. Moreover, even in the forest preserves of the collar counties, which are the counties that are necessarily the closest to Cook County in population size and density, there are still significant differences. Cook County is significantly denser than those counties, creating both more opportunities for crime and more potential victims of stray bullets. Its forest preserve has more significant attractions than the forest preserves in those counties, like the Chicago Botanic Garden and the Brookfield Zoo. Cook County's forest preserve attracts tens of millions more visitors than the forest preserves in those counties. And crime is a more significant problem in the FPDCC than in the forest preserves in those counties. Accordingly, the General Assembly properly single out the FPDCC as a sensitive place while leaving the collar county forest preserves out of the CCL Act's list of excluded areas.

Plaintiff does not point to any case invalidating a firearm prohibition in a sensitive place. Indeed, when similar restrictions have been considered, they have been upheld. The Western District of Washington has determined that city parks may appropriately be designated "sensitive places" as contemplated by *Heller*. *Warden v. Nickels*, 697 F. Supp. 2d 1221, 1228-29 (W.D. Wa. 2010). Likewise, federal courts have upheld laws prohibiting the carrying of loaded weapons in vehicles while in a National Park, signifying the court's willingness to hold wooded recreational

areas as significant places for restricted firearm usage and carry. *United v. Masciandaro*, 638 F. 3d 458 (4th Cir. 2011); *United States v. Parker*, 919 F. Supp. 2d 1072, 1084 (E.D. Ca. 2013).

The analysis of the original Ninth Circuit panel to consider the case *Nordyke v. King*, 563 F.3d 439 (9th Cir. 2009), *vacated*, 575 F.3d 890 (9th Cir. 2009), while only *dicta* and no longer of precedential value, is persuasive.[5] The ordinance at issue in *Nordyke* covered "open space venues, such as County-owned parks, recreational areas, historic sites, parking lots of public buildings . . . and the County fairgrounds." 563 F.3d at 460. The panel reasoned that the Supreme Court initially listed schools and government buildings as examples of sensitive places "presumably because possessing firearms in such places risks harm to great numbers of defenseless people (*e.g.*, children)." *Id.* It determined that "open, public spaces…fit comfortably within the same category as schools and government buildings." *Id.*

And, contrary to Plaintiff's argument, it makes no difference that some areas of the FPDCC are more likely to contain children than other areas. In *GeorgiaCarry.org, Inc. v. U.S. Army Corps of Engineers*, the Court held that the entire 184,094 acres of wooded recreational area controlled by Army Corps of Engineers at issue was appropriately considered a sensitive place even though the most sensitive areas – dams and infrastructure projects managed by the Corps – were located some distance away from the recreational areas. 212 F. Supp. 3d 1348, 1366 (N.D. Ga. 2016). Similarly, the federal courts have expanded the reach of sensitivity for places like post offices to their parking lots, *Bonidy v. U.S. Postal Service*, 790 F.3d 1121, 1125 (10th Cir. 2015); *see also United v. Dorosan*, 350 Fed. App'x. 874, 876 (5th Cir. 2009); and also to within 1,000 feet of schools, *U.S. v. Lewis*, 50 V.I. 995, 1001 (D.V.I. 2008).

---

[5] The defendant, the County of Alameda, later interpreted the gun show at issue to be an "event" which fit within an exception to the ordinance prohibiting firearms on County property. *Nordyke v. King*, 681. F. 3d 1041, 1045 (9th Cir. 2012). Sitting *en banc*, the Ninth Circuit accepted this interpretation and declined to consider the broader constitutionality of the ordinance at that time. *Id.*

Because the FPDCC is a properly designated sensitive place, Section 65(a)(14) is "presumptively lawful" and therefore falls outside the scope of Second Amendment protection. *See Heller*, 554 U.S. at 627 n. 26. It is categorically unprotected and not subject to further Second Amendment review. *Kanter*, 919 F. 3d at 441.

## B. Section 65(a)(14) Of The CCL Act Passes Intermediate Scrutiny.

In the event that the Court finds that the activity in question is not categorically unprotected, the Court moves onto step two of the Second Amendment analysis, where the Court assesses the strength of the justification for the firearm restriction. *Kanter*, 919 F. 3d at 441. Here, the Court evaluates the regulatory means the government has chosen and the public-benefits end it seeks to achieve. *Id.* "[T]he rigor of this judicial review will depend on how close the law comes to the core of the Second Amendment right and the severity of the law's burden on this right." *Ezell v. City of Chicago*, 651 F. 3d 684, 703 (7th Cir. 2011) (hereinafter "*Ezell I*"). The level of rigor exists on a sliding scale. Where the burden is severe, the State must show a strong public-interest justification and a close means-end fit. *Ezell v. City of Chicago*, 846 F. 3d 888, 892 (7th Cir. 2017) ("*Ezell II*"). But, "lesser burdens, and burdens on activity lying closer to the margins of the right, are more easily justified." *Id.* The Seventh Circuit has determined that this standard is akin to "intermediate scrutiny." *Kanter*, 919 F. 3d at 442. This level of scrutiny requires the government to show that the challenged statute is "substantially related to an important government objective." *Id.*

Here, the lowest possible level of scrutiny applies because the restriction on firearms entering real property owned by a municipality is more akin to managerial action affecting only government-owned lands rather than an act of governance. *See GeorgiaCarry.org, Inc.*, 212 F. Supp. 3d at 1366 (applying the lowest possible form of intermediate scrutiny to a firearm restriction on land owned by the Army Corps of Engineers). "The Supreme Court has 'long held the view that there is a crucial difference, with respect to constitutional analysis, between the government

10

exercising the power to regulate or license, as a lawmaker, and the government acting as proprietor to manage its internal operation." *Id.* (quoting *Engquist v. Oregon Dept. of Agric.*, 553 U.S. 591, 598 (2008)); *see also Bonidy*, 790 F. 3d at 1126 ("The government often has more flexibility to regulate when it is acting as a proprietor…than when it is acting as a sovereign."). *Cf. Masciandaro*, 638 F. 3d at 473 ("The government…is invested with plenary power' to protect the public from danger on federal lands under the Property Clause."). Moreover, where a state bans firearms in particular places, "a person can preserve an undiminished right of self-defense by not entering those places; since that's a lesser burden, the state doesn't need to prove so strong a need." *Moore*, 702 F. 3d at 940.

The governmental objective here is maintaining public safety in an area that has a high number of recreational visitors, including a high number of juvenile visitors. There is no doubt that such a public safety purpose is a compelling state interest. *Friedman v. City of Highland Park, Illinois*, 784 F. 3d 406, 419 (7th Cir. 2015). As discussed in the previous section, the FPDCC receives approximately 62 million annual visitors. While 3,538 of its acres of land are within the city limits of Chicago, its two biggest attractions – the Brookfield Zoo and the Chicago Botanic Garden – are located outside of the city. The Chicago Botanic Garden is located in Glencoe (ECF No. 95-5 at 8), while the Brookfield Zoo is located in Brookfield.[6] Limiting the number of firearms in such highly trafficked areas, where children visit with such high frequency, absolutely bears a substantial relation to maintaining the safety of those visitors.

Meanwhile, Section 65(d)(14) imposes at worst a modest burden on an activity that is on the margins of Second Amendment protection. This is not an outright ban on the possession of

---

[6] The Court can take judicial notice that the address of Brookfield Zoo's north gate is 8400 31st Street, Brookfield, IL 60513 because its accuracy is readily determined from a source, the Brookfield Zoo's website, whose accuracy cannot be reasonably questioned. Fed. R. Civ. P. 201(b)(2). BROOKFIELD ZOO: DIRECTIONS AND PARKING, https://www.czs.org/Directions (last visited September 10, 2020).

firearms in public, like in *Moore*. 702 F. 3d at 934. This is a sensible zoning law prohibiting the possession of firearms on a specific piece of real property owned and controlled by a governmental entity. *Cf. Ezell I*, 651 F. 3d at 708. (Noting that public-safety concerns "can be addressed though sensible zoning and other appropriately tailored regulations."). Furthermore, the prohibition here is not even an absolute ban on firearms entering the FPDCC. Licensees with a valid CCL need not leave their firearms at home to visit the FPDCC— they just need to store them in a locked container in their car, out of plain view. 430 ILCS 66/65(b). And anyone who does not wish to comply with this minor regulatory burden is free to travel to one of the hundreds of others of forest preserves throughout the State where concealed firearms *are* permitted, including in Cook County's neighboring counties.

Plaintiff's arguments that Section 65(a)(14) does not bear a substantial relation to maintaining public safety are unpersuasive. Primarily, he argues that, because the FPDCC is the only forest preserve in the State where firearms are prohibited, the restriction cannot be substantially related to public safety. (ECF. No. 100-3 at 7-8). This argument ignores the very real differences between the FPDCC and other forest preserves previously discussed (*i.e.*, population density of the county it is in, number of visitors, the types of attractions, *etc*.). Oddly, Plaintiff seems to imply that if the General Assembly banned concealed weapons in *every* forest preserve – a much more severe restriction – that this would more likely be constitutional. But since the General Assembly limited the restriction to a single forest preserve, Plaintiff argues this somehow weakens its constitutionality. This argument, of course, flies in the face of Second Amendment analysis, which establishes that less burdensome restrictions do not require as strong a justification to meet constitutional muster. *Ezell II*, 846 F. 3d at 892. Indeed, if Plaintiff is correct, then the General Assembly could cure this defect by amending the CCL Act to prohibit the carrying of

concealed weapons in every forest preserve in the State. *See Illinois Republican Party v. Pritzker*, 20-2175, -- F.3d --, 2020 WL 5246656 at *9 (7th Cir. Sept. 3 2020) ("[W]hen the disparate treatment of two groups occurs, the state is free to erase that discrepancy in any way that it wishes. In other words, the state is free to 'equalize up' or to 'equalize down.'") (internal citation omitted).

Additionally, Plaintiff argues that Defendants have not established a connection between public safety and prohibiting firearms in the FPDCC because Defendants have not provided any studies or expert testimony showing that the firearm ban is necessary to increase public safety in the FPDCC. (ECF No. 100-3 at 4). Plaintiff also argues that the restriction is overboard because it covers areas that are not specifically the Chicago Botanic Garden or the Brookfield Zoo. (*Id.* at 8-9). But such proof and analysis of less restrictive alternatives are more akin to a narrow tailoring analysis required for strict scrutiny, and is not necessary where the restricted activity falls on the fringes of Second Amendment activity and the burden imposed is minimal. Additionally, the "fit" between the challenged regulation and the governmental objective "need only be reasonable, not perfect." *Kanter*, 919 F. 3d at 448 (quoting *U.S. v. Mazzarella*, 614 F. 3d 85, 98 (3d Cir. 2010) (internal quotation marks omitted)). As discussed, the fit here is reasonable.

Relatedly, Plaintiff contends that the relatively fewer amount of major crimes within the FPDCC as compared to the City of Chicago and Cook County as a whole is evidence that the gun prohibition within the FPDCC is unnecessary. (ECF No. 100-3 at 5). However, this lower gun crime rate – which is still higher than the crime rates in the collar county forest preserves – has occurred while the restriction has been in place. If anything, this substantially lower gun crime rate in FPDCC as compared to the entirety of Cook County, is evidence that the restriction is *working as intended*.

Section 65(a)(14) passes intermediate scrutiny under the Second Amendment. Therefore, judgment should be entered in favor of Intervenor-Defendant.

## II.     The Due Process And Equal Protection Clauses Are Not Applicable.

Plaintiff also argues that Section 65(a)(14) is unconstitutional when analyzed under the Due Process and the Equal Protection Clauses. However, both of these theories fail.

*First*, substantive due process cannot be called upon when a specific constitutional provision protects the right that is allegedly infringed upon. *Hernandez ex rel. Hernandez v. Foster*, 657 F. 3d 463, 474 (7th Cir. 2011) (quoting *Doe v. Heck*, 327 F. 3d 492, 518 n. 23 (7th Cir. 2003)). Here, Plaintiff's claims are clearly governed by the Second Amendment. Thus, Plaintiff's substantive due process claim necessarily fails.[7]

*Second*, Plaintiff's equal protection claim is also non-viable. Section 65(a)(14) does not treat the residents of Illinois differently. Every person in Illinois is prohibited from carrying firearms in the FPDCC, regardless of residence. A resident of Lake County is no more allowed to carry a firearm in the FPDCC than a resident of Cook County. Likewise, residents of Cook County who are CCL licensees and wish to possess firearms while inside of a forest preserve are free to travel outside of Cook County to do so.

It is well established that the Equal Protection Clause permits the classification of laws based on geographical or population factors rather than general statewide application. "The Fourteenth Amendment does not prohibit legislation merely because it is special, or limited in its application to a particular geographical or political subdivision of the state." *Holt Civic Club v. City of Tuscaloosa,* 439 U.S. 60, 70-71 (1978) (quoting *Fort Smith Light Co. v. Paving Dist.,* 274

---

[7] Plaintiff also argues that his fundamental right to use public property is implicated. (ECF No. 100-3 at 10). This is plainly not the case as Plaintiff remains free to enter and use the FPDCC so long as he does not possess a firearm on his person while inside its borders and outside of his vehicle.

U.S. 387, 391 (1927)). The Equal Protection Clause is only violated if the statute's classification "rests on grounds wholly irrelevant to the achievement of the state's objective." *Holt Civic Club,* 439 U.S. at 71 (citation omitted); s*ee also Kadrmas v. Dickinson Public Schools,* 487 U.S. 450, 457-58 (1988); *Hearne v. Board of Ed. of City of Chicago,* 185 F.3d 770, 774 (7th Cir. 1999) ("the Illinois statute books are riddled with laws that treat communities with more than 500,000 residents—*i.e.*, Chicago—differently from smaller ones.").

Plaintiff's argument that Section 65(a)(14) violates the Equal Protection Clause because it infringes upon a fundamental right is simply a backdoor attempt to impose strict scrutiny. However, "[r]epackaging a claim that is more appropriately brought under a different constitutional provision – here the Second Amendment – as an equal protection claim will not usurp the settled legal framework that has traditionally applied." *Culp v. Raoul*, 921 F. 3d 646, 658 (7th Cir. 2019). Thus, the proper scope of review (if the activity at issue falls within Second Amendment protection) is intermediate scrutiny, which Section 65(a)(14) passes. Plaintiff's equal protection claim fails.

## CONCLUSION

Section 65(a)(14) of the CCL Act is constitutional. The prohibited activity – possessing firearms in a sensitive place – falls outside of the scope of Second Amendment protection. And even if the Second Amendment applies, the law passes intermediate scrutiny. Furthermore, because the Second Amendment governs Plaintiff's challenge, the Due Process Clause and the Equal Protection Clause are not appropriate avenues for review.

WHEREFORE, Intervenor-Defendant Kwame Raoul respectfully requests that this Honorable Court deny Plaintiff's Motion for Summary Judgment, grant Intervenor-Defendant's Cross-Motion for Summary Judgment, and enter judgment in favor of Intervenor-Defendant.

Dated: September 23, 2020

Respectfully submitted,

Kwame Raoul
*Attorney General*
*State of Illinois*

/s/ Hal Dworkin
HAL B. DWORKIN
Assistant Attorney General
Office of the Illinois Attorney General
100 W. Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814-5159
HDworkin@atg.state.il.us

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2020, I submitted with the Clerk for the Northern District of Illinois using the Court's electronic filing system or CM/ECF the above **INTERVENOR DEFENDANT'S MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF HIS CROSS-MOTION FOR SUMMARY JUDGMENT.** Parties of record may obtain a copy through the CM/ECF system which will send notification of such filing(s) to all counsel of record.

By:     */s/ Hal B. Dworkin*
Hal B. Dworkin
Assistant Attorney General